# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES HILL, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-6854 |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                May 14, 2013

Currently pending before the Court is the United States' Motion to Dismiss Plaintiffs' Amended Complaint. For the following reasons, the Motion is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the mistaken entry of a number of U.S. Marshals into Plaintiffs' home. The facts, as set forth in the Amended Complaint, are as follows. At approximately 1:40 a.m. on March 2, 2010, James Hill, his wife Mildred, his daughters Nehisha and Jalesa, his grandson Jermond Webb, and his granddaughter Jalayla Webb were all inside his home at 824 Smith Street in Norristown, Pennsylvania. (Am. Compl. ¶ 10.) Mr. Hill and his wife were trying to get ten month old Jalayla to sleep. (Id.) Upon finally getting Jalayla to sleep, James and Mildred retired to their bed at approximately 1:45 a.m. (Id. ¶ 11.) Nehisha, Jalesa, and Jermond were all asleep. (Id. ¶ 12.) At approximately 2:05 a.m., Mr. Hill heard a loud "boom" coming from the downstairs of his home. (Id. ¶ 13.) He later discovered that the "boom" he heard was

the front door of his home being broken down. (Id.) Mr. Hill immediately began running down the stairs, where he encountered a United States Marshal pointing a gun directly at his head. (Id. ¶ 14.) He was warned to immediately put his hands up in the air or he would be shot. (Id. ¶ 16.) At this point, Mr. Hill noticed four men dressed in black, all pointing handguns or rifles directly at him. (Id.) None of these men, who were U.S. Marshals, had knocked or announced their presence prior to entering the house . (Id. ¶ 15.) Mr. Hill asked the Marshal what was going on and, at gun point, was ordered to sit down. (Id. ¶ 17.) By this time, the other family members had been awakened. (Id. ¶ 18.) They all came downstairs and were confronted by several U.S. Marshals, some with handguns and some with rifles. (Id.) The Marshals pointed their weapons directly at all Plaintiffs. (Id.) Up to this point, none of the Marshals had identified themselves or their reason for being in the Hills' home. All of the Hill family members were ordered at gun point to sit in the living room. (Id. ¶ 20.) They remained seated in the living room while several of the U.S. Marshals searched their home. (Id.) The remaining U.S. Marshals stayed in the living room and continued to point their weapons at the Hill family members, who complied with all orders. (Id. ¶ 21.)

After approximately 5 minutes, one of the Marshals returned to the living room and stated to another Marshal that, "We have the wrong house. This is not the house[.] [I]t must be next door." (Id. ¶ 22.) At this point, all of the U.S. Marshals went next door to 826 Smith Street where they were observed entering the residence. (Id. ¶ 23.) Before doing so, they ordered the Hill family not to move or leave their home. (Id.) The Hills stayed and remained seated. (Id. ¶ 25.) After approximately half an hour, one of the Marshals returned to the Hill residence to advise them that the men in their home were all members of the United States Marshal's service,

that they had a warrant for an individual, and they apologized for breaking down the Hills' door and going to the wrong house. (Id. ¶ 28.) The door eventually had to be replaced at a cost of $831.95. (Id. ¶ 33.)

James Hill, Mildred Hill, Nehisha Hill, Jalesa Hill, Jalayla Webb, and Jermond Webb brought suit on December 7, 2012 bringing claims for assault, battery, false imprisonment, and false arrest. After the United States filed a Motion to Dismiss, Plaintiffs filed an Amended Complaint on February 26, 2013, which dropped the false arrest claim but maintained claims for assault, battery, and false imprisonment. Defendants then filed the instant Motion to Dismiss the Amended Complaint on March 29, 2013, after which Plaintiffs filed a Response in Opposition on April 12, 2013. The Court will now consider the merits of the Motion.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

### A. Plaintiffs Have Adequately Pled an Assault Claim[1]

"To prove [a] claim of assault, under Pennsylvania law, [p]laintiff must show that a particular [d]efendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact in [p]laintiff." Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003) (citations omitted). In other words, "[a]n assault is an intentional attempt by force to do an injury to the person of another." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. 1950)). Police officers may use such force as is necessary under the circumstances to effectuate an arrest. Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). The reasonableness of the force used determines whether the police officer's conduct constitutes an assault and battery.

The United States argues that Plaintiffs have not adequately pled assault because "[t]he amended complaint does not allege any attempt by force to do injury to any of the Plaintiffs." (Def.'s Mot. Dismiss 5.) However, Defendant does not address the issue of apprehension. Paragraph 18 of the Amended Complaint states that the U.S. Marshals aimed their weapons at all Plaintiffs. Such an action is clearly intended to cause apprehension of imminent harmful bodily contact. See Pagan v. Ogden, No. Civ.A.09-0002, 2010 WL 3058132, at *10 (E.D. Pa. July 30, 2010) (implicitly finding that pointing a gun at a Plaintiff with the intent to cause apprehension would constitute assault). As such, assuming the facts as pled in the Amended Complaint are true, Plaintiffs have properly alleged a claim of assault.

Defendant claims, alternatively, that the behavior of the U.S. Marshals under the

---

[1]Plaintiffs have voluntarily withdrawn their battery claim.

circumstances was "standard law enforcement practice meant to insure [sic] the safety of the law enforcement professionals and innocent bystanders[.]" (Def.'s Mot. Dismiss 5.) Whether or not the behavior of the police officers was reasonable, however, cannot be determined by the facts alleged in this Amended Complaint. Consequently, it is inappropriate to dismiss the assault claim at this stage of the case.

### B. Plaintiffs Have Adequately Pled a False Imprisonment Claim

To properly state a claim for false imprisonment under Pennsylvania state law, a plaintiff must prove that: (1) the defendant acted with the intent to confine the plaintiff within fixed boundaries; (2) the defendant's act directly or indirectly resulted in a confinement of the plaintiff; (3) the plaintiff was conscious of the confinement or harmed by it; and (4) the confinement was unlawful. Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004) (internal citations omitted); Pennoyer v. Marriott Hotel Servs., 324 F. Supp. 2d 614, 620 (E.D. Pa. 2004) (internal citations omitted). A confinement is unlawful if the defendant did not have probable cause to confine the plaintiff. Joyner, 313 F. Supp. 2d at 502 (citation omitted). Additionally, actions that have been recognized to constitute a confinement include the use of physical barriers or physical force, submitting to a threat of physical force, and the taking of a person into custody under asserted legal authority. Pennoyer, 324 F. Supp. 2d at 620 (citing Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982)) (further citation omitted). A person is not falsely imprisoned, however, "[i]f there is a known, safe means of escape, involving only a slight inconvenience[.]" Id.

The United States argues that there can be no false imprisonment in this case because there was no unlawful confinement. The entry into 824 Smith Street was done lawfully,

Defendant states, because the Marshals reasonably believed it was the correct residence. The facts alleged in the Amended Complaint, however, do not describe reasonable officer conduct. Though discovery could prove otherwise, when taken in a light most favorable to the Plaintiffs, the description of the officers' conduct was unreasonable. Moreover, the Marshals ordered all Plaintiffs to remain in place after they left the house to search 826 Smith Street. Plaintiffs claim they did not move after receiving this order for fear of their safety. If the officers had no right to confine the Hills upon learning they were in the wrong house, they may have falsely imprisoned the family—regardless of whether or not the Marshals had an initial right to be in the house. Accordingly, Defendant's Motion is Denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is denied. The facts as alleged in the Amended Complaint could give rise to claims for both assault and false imprisonment. Though discovery could prove that the officers' conduct was reasonable under the circumstances, the facts as alleged do not do so. Should discovery prove such, Defendant can raise these issues again at summary judgment.

An appropriate Order follows.